**Dominic STEVENS, Appellant,**

v.

**HIGHWAY, CITY & AIR FREIGHT DRIVERS, DOCKMEN, AND HELPERS LOCAL UNION NO. 600 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA, Appellee.**

No. 85–1641.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 17, 1986.

Decided June 26, 1986.

Alan G. Kimbrell, St. Louis, Mo., for appellant.

Janet E. Young, St. Louis, Mo., for appellee.

Before HEANEY, ARNOLD, and WOLLMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Dominic Stevens, a former employee of Churchill Truck Lines, brought this suit against his union, Highway, City & Air Freight Drivers, Dockmen, and Helpers Local Union No. 600, claiming that the union had failed in its duty of fair representation. Stevens had been fired for allegedly falsifying a timecard, and the union invoked on his behalf the grievance · procedure contained in the collective-bargaining agreement between it and the employer. The procedure, however, resulted in sustaining the employer's decision to discharge Stevens, and Stevens claims in this suit that this unfavorable result was both erroneous and due to the union's inexcusably perfunctory handling of his case. The case was tried to a jury in the District Court,[1] but after the conclusion of the plaintiff's proof, a directed verdict for the defendant was entered. We affirm.

In reviewing the decision of a district court to take a case from the jury, we of course must give to the plaintiff's proof the benefit of every reasonable indulgence, assuming that the jury would have believed all of his evidence and would have drawn from it all reasonable inferences in his favor. Plaintiff accuses the union of the following deficiencies in representation, all of which we assume to be true for present purposes: (1) telling him to be quiet and speak only if spoken to during the hearing before the joint state committee that ultimately decided the case, as well as before the deadlocked local committee; (2) participating in some sort of preliminary hearing held the day before the formal grievance procedure, and permitting the joint state

---

1. The Hon. William L. Hungate, United States District Judge for the Eastern District of Missouri.

committee to consider, at that preliminary hearing, the fact that plaintiff had been fired, also for falsifying a timecard, by the same company ten years earlier; (3) failing to present any witnesses in support of plaintiff's version of the facts (he denied falsifying the timecard), and failing to investigate the case by interviewing witnesses who were present on the night in question; and (4) at the hearing before the joint state committee itself, again failing to object to the committee's considering the fact that plaintiff had been fired for a similar reason ten years ago. Plaintiff points out, in addition, that the previous firing was reversed as a result of a grievance filed on his behalf, and he was reinstated. He also says that he knew nothing of any preliminary hearing and was not given an opportunity to be present at it.

Plaintiff's proof also showed, and the union emphasizes, that the union representative did take the case through both stages of the grievance procedure, stated plaintiff's position to the joint state committee, presented arguments against the position of the employer, and offered an affidavit, supporting plaintiff's version of the facts, from a fellow employee (Cooper) who was present on the night the company claimed plaintiff was late and therefore allegedly falsified his timecard. The record also shows that plaintiff answered certain questions put to him by the joint state committee, and that the only other witness plaintiff now suggests could have been called was not, in plaintiff's own opinion, a necessary witness, in view of the fact that the statement of the witness Cooper would be available. Tr. 51.

We think these facts present an extremely close case, but that the District Court was correct in holding, as a matter of law, that the proof showed at most negligence on the part of the union, and not such an egregious failure to pursue plaintiff's cause as to amount to a breach of the duty of fair representation. The advice to plaintiff not to speak unless spoken to could well have been proper strategy. As for the failure to investigate the matter or to present witnesses, the only witnesses that plaintiff says might have been helpful were Cooper, whose affidavit was presented, and Holleman, whose testimony, as just noted, plaintiff himself judged unnecessary. Certainly the committees might have been more impressed had plaintiff been prepared to deliver a cogent narrative explanation of what happened on the night in question, and had Cooper been called to testify in person. These deficiencies, however, are not sufficiently grave, in our view, to justify a conclusion that the union's behavior was merely "perfunctory." We must remind ourselves that union representatives handling these sorts of matters are not (or need not be) lawyers, and a case claiming breach of the duty of fair representation is not the same thing as a legal malpractice case or a post-conviction petition claiming ineffective assistance of counsel during a criminal trial. As for the joint state committee's apparent consideration of the fact that plaintiff had been fired before, it is important to remember that these proceedings are not governed by the rules of evidence, either as to hearsay or as to relevance, and no authority is cited to convince us that this evidence would or should have been set aside, or not considered, had the union representative objected to it. These sorts of grievance proceedings are designed, over the general run of cases, to produce rough justice, and sometimes their product seems to judges and lawyers to be more rough than just. This is, however, the system to which the employer and the union have agreed, and the Supreme Court has cautioned us not to intrude into it without a compelling reason. See, *e.g., Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 191–92, 87 S.Ct. 903, 917–18, 17 L.Ed.2d 842 (1967).

We recognize that the grievance system set up by this labor contract is not true arbitration by a neutral third party, but instead involves decisions by joint labor-management panels. At one time, this Court noted its "serious reservations" about whether these procedures "meet the

basic standards of fairness that ought to be recognized by the courts," based on "[t]he opportunities for discrimination against the dissident employee with a legitimate grievance or the small employer in competition with those who help control the joint panel." *General Drivers & Helpers Union, Local No. 554 v. Young and Hay Transportation Co.*, 522 F.2d 562, 567 n. 5 (8th Cir.1975). Since then, however, we have held that "[i]t is clear that these grievance procedures of the Joint State Committee, though not called arbitration, are of the type to which the holdings of *Vaca* and *Hines* fully apply." *Warren v. International Brotherhood of Teamsters*, 544 F.2d 334, 340 (8th Cir.1976). While this Court has continued to note that this "kind of arbitration ... is subject to grave abuses," including the potential sacrifice of individual grievants' interests to the broader institutional concerns of labor and management, we have concluded that "the law seems to be established that the joint committee method ... is valid." *Barrentine v. Arkansas-Best Freight System*, 615 F.2d 1194, 1201 (8th Cir.1980), *rev'd on other grounds*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). See also *Automotive, Petroleum & Allied Industries Employees Union, Local 618 v. Gelco Corp.*, 758 F.2d 1272, 1276 (8th Cir.1985); *I.H. Whitehouse & Sons Co. v. Local Union 214*, 621 F.2d 294, 299 (8th Cir.1980).

By the word "perfunctory," we understand the cases to mean conduct that is no more than going through the motions, involving no real effort to put forward a position. We do not believe that a jury verdict categorizing the union's conduct here in that way would be rationally sustainable. A great deal more happened here than simply going through the motions, although we can well understand plaintiff's dissatisfaction with what did happen. We have here, perhaps, a case of deficient representation, even seriously deficient, but the union's conduct was not merely pro forma. We add that there is no claim of discrimination or bad faith, so plaintiff must show perfunctory conduct in order to meet the exacting standards for recovery in this kind of case.

"Mere negligence, poor judgment, or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation," *Curtis v. United Transportation Union*, 700 F.2d 457, 458 (8th Cir.1983), *quoting NLRB v. American Postal Workers Union*, 618 F.2d 1249, 1255 (8th Cir.1980), and quoted with approval in *Taylor v. Belger Cartage Service, Inc.*, 762 F.2d 665, 667 (8th Cir.1985) (per curiam). "[T]o hold lay union representatives to the demanding tests applied to a trained trial lawyer would defeat the aims of informality and speedy resolution contemplated by labor-management grievance agreements." *Findley v. Jones Motor Freight, Inc.*, 639 F.2d 953, 958 (3d Cir. 1981) (reversing a judgment entered on a jury verdict against a union). *Taylor*, which involved the same grievance procedure as in the instant case, affirmed a grant of summary judgment in favor of a union, and observed that "the Union's failure to introduce certain witnesses, and to cross-examine others" and a business agent's "advice ... that [the plaintiff] get notarized statements from three employees, although [he] had no experience in getting such statements" were not sufficient evidence to create a genuine issue of material fact as to breach of the duty of fair representation. 762 F.2d at 668. This Court found the union's responsibility was fulfilled by its concern for the plaintiff's case, its pursuit and representation of that case through the entire grievance procedure, and the plaintiff's opportunity to be heard at both grievance hearings. See also *Findley*, 639 F.2d at 958. By contrast, in *Minnis v. United Automobile Workers*, 531 F.2d 850, 854 (8th Cir.1975), the union agreed to represent the grievant "and then failed to make any effort actually to do so," dropping the grievance without notifying the employee involved until almost six months later.

An injustice may have been done in this individual case, and there is a natural judicial itch to correct it. But we are bound by the strict standards set out by this Court

and the Supreme Court in judging this sort of claim, standards based on the assumption, which we are bound to accept, that industrial peace and fairness to the broad run of employees will be better served if the number of cases in which courts intervene to correct apparent malfunctions of grievance procedures is kept to a minimum. Accordingly, we feel compelled to affirm.

It is so ordered.