# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3090

_____

ABF Freight System, Inc.

*Plaintiff - Appellant*

v.

International Brotherhood of Teamsters, as and for themselves and as representatives of a class of teamsters local unions that are parties to the National Master Freight Agreement; Teamsters National Freight Industry Negotiating Committee, as and for themselves and as representatives of a class of teamsters local unions that are parties to the National Master Freight Agreement; Teamsters Local Union 373, as and for themselves and as representatives of a class of teamsters local unions that are parties to the National Master Freight Agreement; Teamsters Local Union 878, as and for themselves and as representatives of a class of teamsters local unions that are parties to the National Master Freight Agreement; YRC, Inc.; New Penn Motor Express, Inc.; USF Holland, Inc.; Trucking Management, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: April 10, 2013
Filed: August 30, 2013

_____

Before RILEY, Chief Judge, BYE and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

ABF Freight System, Inc., sued the following defendants:  YRC, Inc., New Penn Motor Express, Inc., USF Holland, Inc. (collectively, "YRC"); the International Brotherhood of Teamsters and two of its locals (collectively, the "Union"); and the bargaining representatives of YRC and the Union.  ABF alleged a violation of a collective-bargaining agreement.  Arguing that the agreement's grievance-resolution system was unavailable, ABF asked the district court[1] to appoint a disinterested tribunal to hear the grievance or, alternatively, to provide redress.  The defendants moved to dismiss under Rule 12(b)(6), which the district court granted.  This court affirms.

I.

YRC and ABF are freight trucking companies whose employees are represented by the Union.  Both companies periodically negotiate the terms of a National Master Freight Agreement (NMFA) with the Union.  The NMFA standardizes compensation, benefits, and working conditions.  In negotiating the 2008-2013 NMFA, the Teamster National Freight Industry Negotiating Committee (TNFINC) represented the Union; Trucking Management, Inc. (TMI) represented YRC, Inc. and USF Holland, Inc.  TMI previously represented ABF, but it in 2007 withdrew authorization and began negotiating directly with TNFINC.  In 2008, ABF and TNFINC signed an "Interim Agreement" where ABF agreed to become a party to the new NMFA and implement its work conditions.

---

[1]The Honorable Susan Webber Wright, United States District Court for the Western District of Arkansas.

Following the NMFA's ratification and the onset of the 2008 recession, YRC and TNFINC negotiated amendments reducing pay and benefits of YRC employees, in exchange for various concessions. The amendments applied only to YRC and its employees. ABF negotiated a different compromise, which its employees rejected. ABF complains that the YRC-Union amendments violate provisions of the NMFA that require employers to maintain work conditions at the "highest standards" in effect at the time of the NMFA and not to enter agreements that conflict with the NMFA. On November 1, 2010, ABF filed a grievance under the NMFA and simultaneously brought this case under section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).

Grievances under the NMFA are submitted to a permanent National Grievance Committee (NGC), comprised equally of employer and union representatives. The NGC's majority decisions are final and binding. Deadlocked grievances normally move to the National Review Committee (NRC), consisting of TNFINC's chairman and TMI's executive director. If the two NRC members disagree, TNFINC's chairman and the employer's president have 30 days to try to resolve the dispute. Lawyers may not present cases at any step.

The NMFA mandates that the NGC adopt rules of procedure. Under Article II of those rules, employer and union representatives cannot participate in "cases involving their respective company or local union." Article V states, "No Union or Employer representative shall serve in any capacity on a Committee or Panel provided for under these Rules in hearing a case in which they were directly involved, including hearing a case involving their own Local Union or Company."

Contending these rules disqualify every member of the NGC from hearing its grievance, ABF asked the district court to appoint a disinterested tribunal (or alternatively provide redress). The defendants moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that ABF lacked standing to enforce

the NMFA's provisions because ABF was not a party to the NMFA but merely signed a "me too" agreement. The Union also moved to dismiss under Rule 12(b)(6), arguing that ABF should go before the NGC. The district court dismissed for lack of standing. This court vacated and remanded, explaining that ABF had "produced sufficient facts, for standing purposes, indicating a judicially cognizable interest in the NMFA," and that "[t]he district court erred in deciding the merits of ABF's rights under the NMFA, rather than whether ABF had a judicially cognizable interest in the NMFA." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 960 (8th Cir. 2011). This court declined to consider remedies and explained that the case's posture prevented evaluation of ABF's claims under Rule 12(b)(6). *Id.* at 964-65.

On remand, ABF amended its complaint and the defendants moved to dismiss under Rule 12(b)(6). The district court again dismissed. ABF appeals.

## II.

"We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

ABF's first cause of action seeks appointment of a disinterested tribunal to adjudicate its grievance. ABF contends that the NGC rules disqualify all its members from hearing the grievance because they are all parties to it. ABF concludes that because the rules do not allow replacements, the disqualification of the entire NGC results in a failure or lapse in filling an arbitral vacancy, and under the LMRA, the

court may appoint a replacement. *See **Textile Workers Union of Am. v. Lincoln Mills of Ala.***, 353 U.S. 448, 457 (1957) (allowing for "judicial inventiveness" in resolving problems under the LMRA). *See generally **Bethlehem Mines Corp. v. United Mine Workers of Am.***, 494 F.2d 726, 740 (3d Cir. 1974) (approving district court's fashioning a procedure to choose an umpire after the parties failed to agree on one); ***Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, UAW***, 500 F.2d 921, 924-25 (2d Cir. 1974) (reversing district court's confirmation of an arbitration award and instructing that on remand, if the parties did not agree on an arbitrator, the district court must appoint one).[2]

Here, the district court cannot appoint a new tribunal because the rules provide a solution. The NGC's rules state that they "may be amended or modified by a majority vote of the [NGC]." This offers a way to qualify or replace NGC members, or otherwise efficaciously alter the grievance process. Though the current rules disqualify conflicted NGC members from hearing cases, they do not disqualify any members from rule making. Because the NMFA grievance process is available, the district court is obligated to enforce it. *See **Faber v. Menard, Inc.***, 367 F.3d 1048, 1052 (8th Cir. 2004) ("[A]rbitration agreements are to be enforced unless a party can show that it will not be able to vindicate its rights in the arbitral forum."), *citing **Green Tree Fin. Corp. v. Randolph***, 531 U.S. 79, 90-92 (2000). Appointing a neutral tribunal would amend or modify the rules, which are explicitly powers of the NGC.

---

[2]The NMFA grievance process "is not true arbitration by a neutral third party." *See **Stevens v. Highway, City & Air Freight Drivers, Local 600***, 794 F.2d 376, 377 (8th Cir. 1986). *See also **Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Local 150***, 639 F.3d 286, 290 (7th Cir. 2011) ("[A] joint committee is not a genuine arbitration subject to the [FAA] and the full requirements of impartiality that apply to genuine arbitration."). But, because it is still a form of arbitration, this court relies on case law regarding arbitration. *See **Stevens***, 794 F.2d at 378 (referring to a joint committee grievance procedure as a "kind of arbitration").

Further, there has been no failure or lapse in exercising that power. ABF relies on the Fifth Circuit's definition of a "lapse": "a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process." ***BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.***, 689 F.3d 481, 491-92 (5th Cir. 2012) (internal quotation marks omitted), *quoting* ***In re Salomon S'holders Derivative Litig.***, 68 F.3d 554, 560 (2d Cir. 1995). The fact that considerable time has passed since ABF filed its grievance is unpersuasive. The defendants contend that ABF has no right to invoke the grievance process. If it does not, there is no lapse in invoking that process. Resolving that contention must occur before the NGC can address the case. There has been no mechanical breakdown, either; as explained above, the process is available. The parties' disagreement about that is irrelevant; the possibility of amendment or modification is clear.

ABF complains that "a majority of the NGC's membership consists of representatives of the Defendants, . . . who in any event would never vote to impose liability on their employers in favor of ABF." This risk ABF agreed to by signing the Interim Agreement, which allowed the NGC to promulgate its own rules. *See* ***Delta Mine Holding Co. v. AFC Coal Props., Inc.*** 280 F.3d 815, 823-24 (8th Cir. 2001) (partiality of arbitrator is not a basis to reverse an arbitration award where "[t]he parties expressly agreed to the selection of partisan party arbitrators"); ***Goss Golden W. Sheet Metal v. Sheet Metal Workers Int'l Union, Local 104***, 933 F.2d 759, 764-65 (9th Cir. 1991) ("Goss received exactly what it bargained for" in appearing before a joint board consisting of representatives from the union and Goss's competitors); ***Sheet Metal Workers Int'l Ass'n, Local 162 v. Jason Mfg., Inc.***, 900 F.2d 1392, 1398 (9th Cir. 1990) ("Jason also knew of the NJAB procedures and interest prior to signing the collective bargaining agreement."). Some grievance systems are not meant to be disinterested. *See* ***Stevens***, 794 F.2d at 377 ("We recognize that the grievance system set up by this labor contract is not true arbitration by a neutral third

party, but instead involves decisions by joint labor-management panels.").  Though this court once had "serious reservations" about the basic fairness of such a system (due to possible grave abuses), it concluded that "the law seems to be established that the joint committee method is . . . valid."  *Id.* at 377-78 (modification in original). *See also **Warren v. Int'l Bhd. Of Teamsters***, 544 F.2d 334, 340 (8th Cir. 1976) ("The actions of such joint committees have consistently been considered just as final and binding as if the actions had been called arbitration.").

ABF not only asked the district court to replace an arbitrator or the method of selecting one, but also to impose an entirely new–fundamentally different–grievance resolution system.  The district court properly declined to do so.  *See* **29 U.S.C. § 173(d)** ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."); **General Drivers, Local 89 v. Riss & Co.**, 372 U.S. 517, 519 (1963) ("[T]he policy of the Labor Act can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." (internal quotation marks omitted)); **Art Etc. LLC v. Angel Gifts, Inc.**, 686 F.3d 654, 656 (8th Cir. 2012) ("Arbitration is a matter of contract, . . . 'and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"), *quoting* **United Steelworkers v. Warrior & Gulf Navigation Co.**, 363 U.S. 574, 582 (1960). In its reply brief, ABF argues that the defendants misunderstand its claim.  ABF claims it "merely seeks panelists who are not disqualified under the agreed-upon Grievance Rules."  ABF explains that the district court "could select balanced management-labor panels as contemplated by the NMFA; those panelists simply could not be representatives of the parties."  But such a panel would likely not be disinterested, as requested by ABF's Amended Complaint.  Further, it would still not be the method the parties agreed to – a NGC comprised of representatives of NMFA signatories.

ABF especially emphasizes that the Federal Arbitration Act (FAA) allows for courts to appoint arbitrators in some situations. *See* **9 U.S.C. § 5**. But, the FAA does not apply in this case. *See* **9 U.S.C. § 1** (exempting employment contracts of workers engaged in interstate commerce from the FAA); ***Circuit City Stores, Inc. v. Adams***, 532 U.S. 105, 119 (2001) (transportation workers' employment contracts are exempted from the FAA); ***Int'l Bhd. of Teamsters Local 50 v. Kienstra Precast, LLC***, 702 F.3d 954, 957 (7th Cir. 2012) (truckers occasionally transporting loads across state border "were interstate transportation workers within the meaning of § 1 of the FAA as interpreted by *Circuit City*, which in turn means that the Illini CBA is excluded from the FAA's coverage").

ABF repeatedly cites an FAA case, *National American Insurance Co. v. Transamerica Occidental Life Insurance Co.*, 328 F.3d 462 (8th Cir. 2003). This court held that the district court correctly appointed a substitute when: an arbitrator resigned after proceedings began, the parties could not agree on a replacement process, and the arbitration agreement did not "stipulate a method to replace an arbitrator in the event of a vacancy on the arbitration panel." ***Id.*** at 463-64. This court explained that "[b]ecause the agreements are silent on this issue, this dispute is governed by 9 U.S.C. § 5." ***Id.*** at 464. In this collective bargaining case, the rules are not silent; they stipulate that the rules can be amended or modified, allowing a response to the disqualification issue.

ABF contends that this holding amounts to allowing the arbitrators to set the bounds of their own power. "[T]he law creates a presumption that the parties did not agree to submit any question as to the arbitrator's own power to that very same arbitrator." ***General Motors Corp. v. Pamela Equities Corp.***, 146 F.3d 242, 248 (5th Cir. 1998), *citing* ***First Options of Chicago, Inc. v. Kaplan***, 514 U.S. 938, 944 (1995). "[C]ourts should not assume or conclude that the parties agreed to submit the question of the scope of the arbitrator's own authority to that arbitrator unless there is 'clear and unmistakable evidence' that they did so." ***Id.***, *quoting* ***First Options***,

514 U.S. at 944. "Consequently, any silence, ambiguity or doubts about this question should be resolved in favor of concluding that the parties did not agree to submit the issue to the arbitrator." *Id.* But, "[c]ourts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.'" ***Hines v. Anchor Motor Freight, Inc.***, 424 U.S. 554, 562-63 (1976), *quoting **Steelworkers v. Am. Mfg. Co.***, 363 U.S. 564, 569 (1960). There are no doubts here about the NGC's power. The NMFA explicitly mandates that the NGC adopt rules. The NGC's rules include both disqualification from hearing cases for conflict of interest, and the ability to amend or modify the rules (but do not disqualify the NGC from such amending or modifying). That disqualified NGC members may formulate a new rule responsive to disqualification finds support elsewhere in the NMFA. Under Article 7 of the NMFA, "No Employer or Union representative who is directly involved in a case may serve as a panel member except at a local level committee where there is only one Local Union subject to the jurisdiction of the committee." Similarly, if the NGC and NRC deadlock, TNFINC's chairman (a union leader) and the employer's president try to resolve the dispute. Both scenarios allow for the participation of interested parties without a third-party arbitrator.

Generally, a disqualified arbitrator may name a replacement if the rules allow it. *See **Apperson v. Fleet Carrier Corp.***, 879 F.2d 1344, 1355 (6th Cir. 1989) (affirming arbitrator's selection of his replacement where the procedure for doing so was mandated by the agreed-upon rules). Though the rules here do not mandate the NGC's specific response to a disqualification, they nonetheless make clear that resolving it by amending or modifying the rules is an issue for the NGC.

IV.

ABF's second cause of action is its request for redress directly from the court for breach of the NMFA. The defendants object that the district court cannot grant relief because ABF did not exhaust the grievance process. *See **United Paperworkers***,

484 U.S. at 37 (1987) ("[W]here the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute."). ABF responds that: 1) exhaustion is excused because the grievance resolution process is unavailable and exhaustion would be futile, 2) the defendants failed to affirmatively plead and prove failure to exhaust, and 3) the defendants waived their right to insist on exhaustion. Exhaustion is reviewed de novo. *Chorosevic v. MetLife Choices*, 600 F.3d 934, 941 (8th Cir. 2010).

A.

ABF argues that it could not exhaust the grievance resolution process because it is unavailable or futile here. *See Barron ex rel. D.B. v. S.D. Bd. of Regents*, 655 F.3d 787, 792 (8th Cir. 2011) (exhaustion is excused where "adequate relief likely could not have been obtained through the administrative process"); *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 609 (8th Cir. 2004) ("The futility exception applies 'where the effort to proceed formally with contractual or administrative remedies would be wholly futile.'"), *quoting Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 330 (1969). To the contrary, as explained, the rules offer a means of amending or modifying the grievance resolution process, so that it is not unavailable or futile.

B.

ABF next asserts that the defendants are not entitled to the exhaustion defense, which they raised a year after litigation began, because they failed to affirmatively plead and prove it. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 75 (1998) ("Respondents' answer asserted various affirmative defenses, including Wright's failure to exhaust his remedies under the CBA."); *Nash v. Lappin*, 172 Fed. Appx. 702, 703 (8th Cir. 2006) (per curiam) ("[T]he exhaustion requirement is an affirmative defense that a defendant must plead and prove."). But, though it generally

must be affirmatively pled and proved, "[i]f an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6)." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (alterations in original); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007).

ABF's failure to exhaust is apparent on the face of its Amended Complaint. ABF's grievance was filed the same day as this suit. The Amended Complaint says, "The ABF Grievance *seeks* a declaration that the NMFA Amendments No. 1, No. 2 and No. 3 be set aside." (emphasis added). Responding to the defendants' motions to dismiss, ABF stated that it "has pursued and *is pursuing* the grievance process," and that it "invoked those procedures by filing a grievance and *stands ready* to pursue them." (emphases added). Because the grievance process was initiated the same day as the Complaint and was ongoing during the suit, it could only be exhausted if the process were unavailable or futile. ABF alleged in its Amended Complaint "that the requisite tribunals cannot be constituted as required under the Grievance Rules." But it was apparent on the face of the complaint that the NGC was empowered to amend or modify its rules because the rule so stating was attached to the Amended Complaint. *See C.H. Robinson*, 695 F.3d at 764 (the phrase "face of the complaint" includes materials attached to the complaint). This court must accept ABF's factual allegations, but not its legal conclusions. *See Ashcroft*, 556 U.S. at 678. Because the NGC's ability to amend or modify the rules means the grievance resolution process is not unavailable or futile, the face of the complaint indicates that the process is not unavailable or futile.

C.

According to ABF, "Defendants waived their right to assert the grievance process as a defense by actively and substantially participating in litigation." This court reviews the question of waiver de novo. *Wooten v. Fisher Inv., Inc.*, 688 F.3d

-11-

487, 492 (8th Cir. 2012).  To prove the defendants waived their right to the process, ABF must show:  (1) the defendants knew of the right to it; (2) they acted inconsistently with that right; and (3) their inconsistent acts prejudiced ABF.  *See* ***id.*** at 492-93.  "[I]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." ***Lewallen v. Green Tree Serv'g, LLC***, 487 F.3d 1085, 1090 (8th Cir. 2007).  *See generally* ***Nicholas v. KBR, Inc.***, 565 F.3d 904, 907 (5th Cir. 2009); ***United States v. Park Place Assoc., Ltd.***, 563 F.3d 907, 921 (9th Cir. 2009).  It is undisputed that all parties knew of the grievance process.

"A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." ***Southeastern Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC***, 588 F.3d 963, 968 (8th Cir. 2009) (internal quotation marks and alterations omitted).  "A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner."  ***Id.***  "To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" ***Lewallen***, 487 F.3d at 1091, *quoting* ***Cabinetree of Wis., Inc., v. Kraftmaid Cabinetry, Inc.***, 50 F.3d 388, 391 (7th Cir. 1995).

In *Ritzel Communications, Inc. v. Mid-American Cellular Telephone Co.*, 989 F.2d 966, 969 (8th Cir. 1993), this court found substantial invocation of the litigation machinery after third-party defendants moved to dismiss the case.  But, those defendants did much more than just move to dismiss:  they actually tried the case in district court while their appeal of its denial of a motion-to-stay-litigation-and-compel-arbitration was pending (in part because of their repeated requests for extensions).  ***Id.*** at 968.  "By failing to request a stay in this court or to move to expedite the appeal and by delaying the process of appeal so that oral argument did

-12-

not occur until after the trial on the merits in the district court, the group squandered the economies of arbitration and gave the appearance of having no sincere interest in avoiding litigation of the dispute." *Id.* at 970. The "whole purpose of the arbitration clause" was defeated. *Id.* at 970. Here, there was no trial on the merits. There was no squandering of the economies of the grievance process because the case was about the threshold issue whether ABF had a right to it.

In *Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 919-21 (8th Cir. 2009), this court held that a motion to dismiss under Rules 12(b)(1) and 12(b)(6) substantially invoked the litigation machinery:

> Advance America's motion to dismiss was extensive and exhaustive, and substantially invoked the litigation machinery. Advance America drew the district court's attention to multiple matters of first impression, asserted Plaintiffs failed to state claims upon which relief could be granted, and encouraged the district court to resolve the parties' entire dispute in Advance America's favor. In other words, Advance America sought a final decision from the district court upon the merits of the parties' dispute, even though a request to dispose of a case on the merits before reaching arbitration is inconsistent with resolving the case through arbitration.

*Id.* at 921 (internal quotation marks and citations omitted). But, "[n]ot every motion to dismiss is inconsistent with the right to arbitration. Motions to dismiss are not homogeneous. District courts should continue to consider the totality of the circumstances." *Id.* at 922 (internal citations omitted); *see also Ritzel*, 989 F.2d at 971 ("Whether there is waiver depends on the particular facts before us.").

*Hooper* lists *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir. 1985), as a case where a motion to dismiss was not inconsistent with the right to arbitration. *Hooper*, 589 F.3d at 922 This court described that case as "recognizing a motion to dismiss may be necessary to sort out arbitrable and

nonarbitrable claims." *Id.*  Though most of the claims the defendant moved to dismiss in *Sweater Bee* were non-arbitrable, at least one (albeit frivolous) arbitrable claim was dismissed as a result of the motion.  *Sweater Bee*, 754 F.2d at 463.  That court held that there was no waiver despite the fact that dismissal of the arbitrable claim was a "ruling on the merits." *Id.*  Similarly, the defendants here did not waive the argument of exhaustion in contesting ABF's standing because that contest addressed whether ABF had rights under the NMFA.  If it did not, there was no process to exhaust.

This case is similar to *Dumont v. Saskatchewan Government Insurance*, 258 F.3d 880 (8th Cir. 2001).  There, the families of automobile crash victims sued SGI in state court. *Id.* at 883.  SGI removed the case to federal court, answered a motion for partial summary judgment, and moved to dismiss for lack of personal jurisdiction and forum non conveniens. *Id.* at 883-84.  The district court denied all  motions, ordering binding arbitration in accordance with the insurance policies. *Id.* at 884.  The families argued that SGI waived its right to enforce the arbitration provisions. *Id.* at 886.  Affirming the district court's finding of no waiver, this court explained that "SGI took no action with respect to the merits of the case prior to the district court ordering arbitration.  Rather, SGI sought early dismissal of the case on jurisdictional and quasi-jurisdictional grounds." *Id.* at 886-87.

ABF claims that *Dumont* is inapplicable because on their initial appeal,  these defendants asked this court to affirm under Rule 12(b)(6) if it determined that the question was one of merits, while in *Dumont*, the defendant "took no action with respect to the merits." *Id.* at 886; *see Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (dismissal under Rule 12(b)(6) is a judgment on the merits). Seeking a decision on the merits does not necessarily denote waiver.  *See Hooper*, 589 F.3d at 922, *citing Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726-27 (7th Cir. 2004) (finding no waiver by a party that had filed a Rule 12(b)(6) motion), *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 886-88 (2d Cir. 1985) (same), *and*

***Sweater Bee***, 754 F.2d at 463 (finding no waiver where dismissal of an arbitrable claim was a "ruling on the merits"). Though this court in the previous appeal stated that the district court's dismissal erroneously decided "the merits," those merits concerned standing, not the actual grievance. *See* ***ABF Freight Sys., Inc.***, 645 F.3d at 960. The question of contract formation and standing required judicial determination before ABF needed to bring its grievance through the grievance process. *See* ***International Ass'n of Bridge, Structural, Ornamental and Reinforcing Ironworkers, Local 493 v. EFCO Corp. & Constr. Prods., Inc.***, 359 F.3d 954, 956 (8th Cir. 2004) ("whether the parties have a valid arbitration agreement that binds them is a question for judicial determination"), *citing* ***First Options***, 514 U.S. at 943-46 (1995). Even the defendants' Rule 12(b)(6) arguments were only about whether ABF was a party to the NMFA. Looking at the totality of the circumstances, the defendants' argument that ABF was not a party to the NMFA was not inconsistent with arguing that if ABF were a party, its complaint should be dismissed for failure to exhaust.

The parties extensively discuss a Fifth Circuit case, *General Guaranty Insurance Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924 (5th Cir. 1970). It explains, "The propriety and desirability of having an initial judicial determination of whether an arbitration contract exists is well recognized." ***Id.*** at 928. In *General Guaranty*, NOGA argued that the contract at issue, including an arbitration clause, had been abandoned. ***Id.*** at 926. The Fifth Circuit held that in so arguing, NOGA did not waive arbitration:

> GIC's implicit position is this: because the issue of abandonment would determine not only the existence of an arbitration agreement but also effectually determine a defense of NOGA and the indemnitors on the merits, NOGA had to make an election – it could admit the contract was in effect and call for arbitration, or deny the viability of the contract and defend in court. No such election was required.
> . . .

-15-

A defendant can waive arbitration by actions which it takes during determination in the legal forum of the threshold issue of existence of an arbitration contract, if those actions are sufficiently inconsistent with the right to arbitrate. But it loses sight of the purposes and effects of arbitration, and of the desirability of the initial judicial determination, to treat the court proceedings as a sort of judicial tightrope which the party seeking arbitration walks at his peril.

*Id.* at 929. True, the facts in *General Guaranty* differ from those here in that when NOGA moved for summary judgment, it moved in the alternative for a stay pending arbitration. *Id.* at 926. ABF contends that NOGA's simultaneous assertion of arbitration rights prevented waiver. But, the Fifth Circuit explained that pre-suit demand for arbitration was not necessary to prevent waiver and in fact could subject a defendant like NOGA "to the risk of a charge by the other party that by demanding arbitration it has recognized the continued existence of the contract claimed to be abandoned." *Id.* at 928. It thus concluded that "NOGA did not lose its rights to arbitration by pleading alternatively that the contract had been abandoned *and* that court proceedings should be stayed pending arbitration." *Id.* at 928 (emphasis added).

No election between pursuing the grievance process or defending in court was required here, either. The defendants' initial motions to dismiss did not substantially invoke the litigation machinery, and therefore did not waive the right to the grievance process. The defendants did not file the lawsuit or engage in extensive discovery. *See* ***Southeastern Stud & Components, Inc.***, 588 F.3d at 968. They did not seek to serve discovery requests after the adversary proceeding commenced, or move to continue the case. *See* ***Lewallen***, 487 F.3d at 1091, 1093. They did not present "multiple matters of first impression." *See* ***Hooper***, 589 F.3d at 921. This is not a case where "a party actively litigates a case for an extended period only to belatedly assert that the dispute should have been arbitrated, not litigated, in the first place." ***Nino v. Jewelry Exch., Inc.***, 609 F.3d 191, 209 (3d Cir. 2010). The litigation at issue

-16-

here was not an alternative to the grievance process; it was to determine whether ABF must use the process.

ABF points out that the defendants "did not ask the district court to stay or dismiss ABF's lawsuit pending resolution of the grievance proceeding." That was appropriate, since they contended ABF was not a party to the NMFA and therefore had no access to the grievance process. The fact that a year passed before the defendants raised the exhaustion issue does not change the fact that they were doing "all [they] could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Lewallen*, 487 F.3d at 1091, *quoting Cabinetree*, 50 F.3d at 391.

ABF adds that "YRC has waived its right for the additional reason that it has taken inconsistent and confusing legal positions regarding the enforceability of the contract, belatedly invoking the NMFA grievance process as a defense in this litigation while also insisting that it has no agreement (and thus no grievance mechanism with ABF)." To the contrary, YRC's alternative positions are not confusing. As YRC says, "YRC is not suddenly agreeing that ABF is a party to the NMFA, as ABF contends. Rather, YRC is accepting for purposes of a motion to dismiss *ABF's allegation* that ABF is a party to the same collective bargaining agreement as YRC (albeit noting clearly that YRC disagrees with the allegation)."

Because the defendants did not act inconsistently with the right to the grievance process, this court need not consider the element of prejudice. *See Dumont*, 258 F.3d at 887.

V.

The decision of the district court is affirmed.

_____

-17-